THOMAS A. McGREW, Plaintiff and Appellant, v. CONSOLIDATED FREIGHTWAYS, INC., a Corporation, Defendant and Respondent.

No. 10469

Submitted November 13, 1962. Decided January 4, 1963.

377 P.2d 350

Robert J. Boyd (argued orally), John N. Radonich (argued orally), Anaconda, William R. Taylor, Deer Lodge, for appellant.

Kendrick Smith (argued orally), Butte, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered pursuant to an order granting a directed verdict for defendant, respondent here, Consolidated Freightways.

The action was brought by plaintiff and appellant against two defendants, Harley Peet and his employer, Consolidated Freightways, to recover damages for an assault and battery.

Hereinafter plaintiff and appellant will be referred to as plaintiff, the defendant and respondent Consolidated Freightways as Consolidated and the defendant Harley Peet as Peet.

Plaintiff worked for Consolidated, his duties included hostling trucks, i. e., backing trucks to a loading dock. He worked the day shift from 8:00 A. M. to 5:00 P. M. and, upon frequent occasions, was required to work until 6:00 P. M. Consolidated's foreman of the day shift, Fred Hunt, was plaintiff's immediate supervisor.

On April 28, 1959, the night shift came to work at 5:00 P. M. Peet was lead man on that shift. His duties as lead man were to give orders to the men working under him and, in general, to see that the duties of those men were carried out.

A short time before 5:00 P. M., on April 28, 1959, Hunt told plaintiff to remain on the job until 6:00 P. M. Hunt gave plaintiff a schedule indicating where trailers were to be positioned at the loading dock and that certain tractor-trucks were to be hooked to certain trailers. Shortly thereafter Robert Whorley, another employee, came to plaintiff and told him that Peet had instructed Whorley to take over the hostling,

and that plaintiff was to quit work. Plaintiff told Whorley that he had orders to do the hostling and that Whorley should go tell Peet, in vulgar language, what Peet could do with himself. Whorley relayed the message to Peet.

By 5:50 P. M. plaintiff had completed the hostling so he returned to the loading dock to help load one of the trailers. Plaintiff obtained a hand truck. He was waiting for another employee to load the hand truck when Peet approached. Peet asked plaintiff if he had told Whorley to relay the vulgar message to Peet. Plaintiff answered in the affirmative. Immediately Peet attacked plaintiff, according to plaintiff's version.

As a result of the altercation, plaintiff brought this suit. In its separate answer, Consolidated admitted that plaintiff and Peet were employed by Consolidated at the time of the altercation. Consolidated admitted that Peet was a servant acting within his capacity as lead man. As an affirmative defense Consolidated alleged that plaintiff was injured in the course of his employment and was covered by the Montana Workmen's Compensation Act.

Plaintiff had not filed any written notice not to be bound by the Workmen's Compensation Act. Consolidated was bound by the provisions of Plan One of the Act and was covered at the time of the incident in question.

At the close of the submission of evidence Consolidated moved for a directed verdict. The motion was granted. The jury returned a verdict against defendant Peet in favor of the plaintiff for actual and punitive damages. Two judgments were entered, one for Consolidated that the plaintiff take nothing as against them, the other for plaintiff in the amount of $13,980 as actual damages and $1,110 punitive damages against defendant Peet. No appeal was taken on this latter judgment. Plaintiff's appeal is from the judgment on the directed verdict for one defendant, Consolidated.

The basic question presented by plaintiff's specification of error is whether or not plaintiff's injury was the result of an industrial accident, i. e., did plaintiff receive an injury within the meaning of that word as it is used in our Workmen's Compensation Act? If the answer to that question is in the affirmative, then, as to this injury, the Act is exclusive and plaintiff may not maintain a common-law action against Consolidated for assault and battery. Sections 92-203, and 92-204, R.C.M.1947.

At the time of this incident the word injury was defined by Revised Codes of Montana, 1947, § 92-418, as follows:

" 'Injury' or 'injured' refers only to an injury resulting from some fortuitous event, as distinguished from the contraction of disease."

A "fortuitous event" has been defined by this court as synonymous with "industrial accident." In Nicholson v. Roundup Coal Mining Co., 79 Mont. 358, 257 P. 270, 274, this court said that the word " 'fortuitous,' * * * means 'happening by chance or accident; coming or occurring unexpectedly or without known cause; chance; accident' (Webster's New International Dict.)."

The definition of "injury" as that word is used in our Workmen's Compensation Act is substantially the same as the meaning of "accident" as that word is used in other workmen's compensation acts. See Fidelity & Casualty Co. of New York v. Industrial Accident Commission, 177 Cal. 614, 171 P. 429, L.R.A.1918F, 856; Stasmos v. State Industrial Commission, 80 Okl. 221, 195 P. 762, 15 A.L.R. 576. Under those acts it has been held that an assault, such as is involved in the present case, is an industrial accident. Western Indemnity Co. v. Pillsbury, 170 Cal. 686, 151 P. 398; Oklahoma-Arkansas Tel. Co. v. Fries, 128 Okl. 295, 262 P. 1062.

We cannot perceive of any social or economic policies which would dictate that this type of occurrence should not be covered by our Workmen's Compensation Act. On the contrary,

the very purpose of the Act compels the conclusion that this was an industrial accident.

Plaintiff contends that inclusion of this assault under the Workmen's Compensation Act will allow an employer to "discipline with a 'cat of nine' and to escape liability allowed for lacerations of the back." This is not a direct nor intentional nor authorized assault by an employer. Larson in Volume 2 of his work, The Law of Workmen's Compensation, § 68.21 p. 156 (1961) very aptly states:

"When the person who intentionally injures the employee is not the employer in person but a foreman, supervisor or manager, both the legal and the moral reasons for permitting a common-law suit against the employer collapse.

"The legal reason for permitting the common-law suit for direct assault by the employer, as we have seen, is that the same person cannot commit an intentional assault and then allege it was accidental. This does not apply when the assailant and the defendant are two entirely different people. Unless the employer has commanded or expressly authorized the assault, it cannot be said to be intentional from his standpoint any more than from the standpoint of any third person. Realistically, it to him is just one more industrial mishap in the factory, of the sort he has a right to consider exclusively covered by the compensation system."

We hold that this assault was covered by the Workmen's Compensation Act, so far as the employer was concerned. Therefore, plaintiff's remedy, so far as Consolidated was concerned, was exclusive under the Act, and the directed verdict was proper.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, DOYLE and JOHN C. HARRISON, concur.