ZADIE RICHARDSON, Plaintiff-Appellant, v. THE COUNTY OF COOK *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—92—0818

Opinion filed July 27, 1993.

Irving M. Friedman and Michael B. Erp, both of Katz, Friedman, Schur & Eagle, of Chicago, and Becker, Baiser & Rapoport, of Highland Park (David J. Kupets, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Karen A. Covy, Frank J. Oles, Thomas M. Davy, and John Carreon, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff Zadie Richardson, an employee at Oak Forest Hospital, brought suit to recover for injuries she allegedly suffered from intentional torts committed by her supervisor and other employees at the hospital and for violation of her civil rights. Her suit also included a claim for punitive damages. The circuit court granted summary judgment for defendants, finding that the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1991, ch. 48, par. 138.1 *et seq.* (now codified as 820 ILCS 305/1 *et seq.* (West 1992))) provided the exclusive remedy for plaintiff, that no custom or policy established by defendants caused plaintiff's injuries, and that punitive damages were inappropriate. This appeal is from that ruling.

Plaintiff filed suit against Cook County (the County); the Cook County Board of Commissioners (the Board); George Dunne, the president of the Board at that time; Oak Forest Hospital (the hospital), which was owned and operated by the County; Edmond Lawler, the director of the hospital; James Brodie, the director of security at the

hospital; security officers L.J. DeWinters and Joseph Hale; and Janet Parejko, plaintiff's supervisor at the hospital.

In her complaint, plaintiff alleged that on November 8, 1985, as she was leaving her work area for her scheduled lunch break, Parejko shoved her back into the room, struck her in the chest repeatedly, blocked the exit, and verbally threatened her.

Shortly thereafter, she alleged, she attempted to file a complaint against Parejko with hospital security, but officers Hale and DeWinters refused to accept it. Then, in response to a complaint filed by Parejko, and without any independent investigation, Hale and DeWinters arrested her. Plaintiff began suffering chest pains, as a result of which, under Hale's direction, she was escorted to health services by male security officers. There, because of a suspected coronary condition, medical personnel instructed her to disrobe. Two male officers then accompanied her into the restroom and later remained with her during the examination.

The nine-count complaint stated that plaintiff was the victim of an unprovoked assault and battery, that she was falsely arrested, that she was falsely imprisoned, that defendants intentionally inflicted "severe emotional distress" upon her, and that defendants violated 42 U.S.C. §1983 (1988) by adopting and implementing a policy of supporting supervisors in confrontations with subordinate employees, by failing to properly train supervisors to prevent employee abuse, and by failing to train hospital security officers in proper investigation procedures. She also alleged that the conduct of defendants was "willful, wanton and malicious," thus entitling her to punitive damages.

Defendants moved for summary judgment asserting that plaintiff's action was barred by the exclusivity provision of the Act and that the policies she alleged did not exist. In response, plaintiff supplied excerpts of transcripts from a union grievance hearing involving a charge against Parejko before the labor relations board. The transcripts indicated that Parejko called employees at home when they were absent from work due to illness in order to determine when they would return; that Parejko became hostile when she learned that she was unable to suspend plaintiff for an unrelated incident; that Parejko stated that she would not be challenged by the union regarding the setting of vacation days; that Parejko stated that the department would be run according to her wishes; and that Parejko challenged an employee to a fight in front of a union steward. Following a hearing, the circuit court granted defendants' summary judgment motion. This appeal followed.

■ Initially, we note that the Board and the hospital have been improperly named as defendants in this case. The Board is not a separate entity which can be sued. Rather, its powers are coextensive with the County. (See Ill. Rev. Stat. 1991, ch. 34, par. 5—1004 (now codified as 55 ILCS 5/5—1004 (West 1992)) ("[t]he powers of the county *** shall be exercised by a county board"); see also *Mayes v. Elrod* (N.D. Ill. 1979), 470 F. Supp. 1188, 1192 (holding that the sheriff's office and the Board are indistinct from the County and therefore cannot be sued).) Similarly, the hospital is not subject to suit because it is owned and operated by the County and is not itself a legal entity. See *Jackson v. Village of Rosemont* (1988), 180 Ill. App. 3d 932, 937-38, 536 N.E.2d 720 (holding that Rosemont Horizon Stadium is merely a building operated by the Village of Rosemont and therefore is not a legal entity that can sue or be sued).

■ Plaintiff first contends that the circuit court erroneously concluded that the Act provided the exclusive remedy for her injuries. She asserts that because her injuries were intentional rather than accidental, they were not compensable under the Act. We disagree.

Under the Act, an employee has "[n]o common law or statutory right to recover damages from the employer *** or [its] agents or employees" for injuries incurred in the course of her employment. (Ill. Rev. Stat. 1991, ch. 48, par. 138.5(a) (now 820 ILCS 305/5(a) (West 1992)).) Instead, the Act provides the exclusive remedy for claims against an employer for accidental injuries in the work place by establishing liability without fault and by abrogating common law defenses. (*Johnson v. Federal Reserve Bank* (1990), 199 Ill. App. 3d 427, 433, 557 N.E.2d 328, *appeal denied* (1990), 133 Ill. 2d 558, 561 N.E.2d 693; *Jablonski v. Multack* (1978), 63 Ill. App. 3d 908, 910, 380 N.E.2d 924.) However, an employee's action against her employer will not be prohibited if the "employee-plaintiff proves: (1) that the injury was not accidental; (2) that the injury did not arise from his or her employment; (3) that the injury was not received during the course of employment; or (4) that the injury was not compensable under the Act." *Meerbrey v. Marshall Field & Co.* (1990), 139 Ill. 2d 455, 463, 564 N.E.2d 1222.

In the instant case, plaintiff asserts that the Act does not prohibit her cause of action because her injuries were intentional rather than accidental and because the injuries were not compensable under the Act, since they were neither causally related to her job nor occurred as a result of the performance of her duties. Defendants respond that all work-related injuries are considered "accidental" under the Act unless the employer directed, encouraged, or committed the inten-

tional tort, and that nothing in the record demonstrates that defendants acted with the specific intent to injure. Defendants also maintain that plaintiff's injuries are compensable under the Act because plaintiff's own allegations demonstrate that the events took place at the hospital and that each individual defendant was acting within the course and scope of his or her employment.

Illinois courts have repeatedly held that an injury which was intentionally inflicted upon an employee by another employee is considered "accidental" for purposes of the Act if it was "unexpected and unforeseeable from the injured employee's point of view." (*Meerbrey*, 139 Ill. 2d at 463; see also *Jablonski*, 63 Ill. App. 3d at 910.) However, if the injuries were intentionally inflicted by the employer or its alter ego, or the injurious actions were commanded or expressly authorized by the employer, the exclusivity provisions of the Act will not apply and the employee may pursue a common law action against the employer. *Meerbrey*, 139 Ill. 2d at 464; *Johnson v. Federal Reserve Bank* (1990), 199 Ill. App. 3d 427, 433-34, 557 N.E.2d 328 (holding that the Act did not bar the plaintiff's cause of action for intentional infliction of emotional distress where the injuries were inflicted "by persons acting *** as the alter ego of the [employer]").

Furthermore, the fact that the employee sustained no physical injury or trauma is irrelevant to the applicability of the Act. (See *Pathfinder Co. v. Industrial Comm'n* (1976), 62 Ill. 2d 556, 563, 343 N.E.2d 913 (holding that an employee who suffered a sudden and severe emotional shock after observing injury to a co-worker could recover under the Act even though she sustained no physical injury).) Rather, an injury is compensable under the Act if it was sustained during the course of employment and arose from that employment. (*Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 237-38, 408 N.E.2d 198.) In *Collier*, the plaintiff sued his employer for the intentional infliction of emotional distress arising from the "extreme and outrageous" medical care he received from the company's medical attendant when he was suffering from cardiac arrest. The circuit court struck the complaint for failure to state a cause of action and the appellate court affirmed. The supreme court then affirmed the appellate court, holding that plaintiff's cause of action was barred by the exclusivity provision of the Act because emotional distress is compensable under the Act provided the distress arose out of the employment. The court then found that the plaintiff's injury arose from his employment because "[h]e was at his place of employment performing his duties when he was stricken with an illness prompting immediately the injuries of which he complain[ed]." *Collier*, 81 Ill. 2d at 237-38.

In the present case, it is clear that Parejko's alleged actions, as well as those of Hale and DeWinters, constituted intentional torts. However, no facts were presented suggesting that they were acting under the direction of their employer. The mere allegation in plaintiff's complaint that defendants were acting within the scope of their authority "is not equivalent to an allegation that [the employer] expressly authorized [them] to commit the specific acts in question." (*Meerbrey*, 139 Ill. 2d at 465.) Therefore, because the injuries were unexpected and unforeseen by plaintiff and not authorized by her employer, they must be considered "accidental" under the Act.

Further, the injuries were compensable under the Act because they were sustained during the course of plaintiff's employment and arose out of a dispute regarding the performance of her duties. "[I]t is universally agreed that if [an] assault grew out of an argument over the performance of the work, *** quitting working, *** and the like, the assault is compensable." (1 A. Larson, Workmen's Compensation §11.12(b), at 3—212 to 3—221 (1993).) Thus, because common law actions against an employer based on *respondeat superior* are barred by the Act, plaintiff's claims against the County and defendants Dunne, Brodie, and Lawler are inappropriate as a matter of law. We therefore affirm the circuit court's disposition of plaintiff's claims against those defendants.

■ The circuit court also granted summary judgment for defendants Parejko, Hale, and DeWinters. Plaintiff contends that this was improper because the Act does not prohibit actions against other employees who commit intentional torts. We agree.

Although the Act prohibits an employee from pursuing a negligence action against a fellow employee for injuries which occurred during the course of employment (*Rylander v. Chicago Short Line Ry. Co.* (1959), 17 Ill. 2d 618, 628, 161 N.E.2d 812 (noting that the purpose of the Act was to place the cost of industrial accidents on the industry)), it does not prohibit an employee from seeking redress against a co-employee for injuries arising out of intentional torts. (*Meerbrey*, 139 Ill. 2d at 471-72; *Jablonski*, 63 Ill. App. 3d at 915.) The rationale behind this distinction is that " '[t]he socially beneficial purpose of the workmen's compensation law was not meant to permit a person who commits an intentional tort to use the compensation law as a shield against liability.' " *Meerbrey*, 139 Ill. 2d at 472, quoting *Jablonski*, 63 Ill. App. 3d at 915.

In *Meerbrey*, the plaintiff sued his employer and one of its security guards for false imprisonment, false arrest, and malicious prosecution. He alleged that when he was working as a part-time cashier at

his employer's store, he was summoned to the security office where he was questioned by the security guard regarding a suspected theft. Following the interview, he signed a promissory note and subsequently paid the employer $500 pursuant to its terms. When he returned to the employer's store approximately three weeks later in order to obtain his payroll check, the security guard arrested him and forcibly took him to the security office and eventually charged him with criminal trespass. The circuit court dismissed the plaintiff's suit, finding that the claims against the employer were barred by the exclusivity provisions of the Act and that the plaintiff had failed to allege sufficient facts to support the claims against the security guard. The appellate court affirmed the circuit court's ruling with respect to the employer, but found that the claims against the security guard were not precluded by the Act and that plaintiff had sufficiently alleged a cause of action. The supreme court affirmed the appellate court and stated for the first time that "the exclusive remedy provisions of the Act do not bar employees from pursuing a common law action against co-employees for injuries arising out of intentional torts." *Meerbrey*, 139 Ill. 2d at 472.

As in *Meerbrey*, plaintiff here alleged that Parejko, Hale, and DeWinters each committed intentional torts upon her. Thus, under *Meerbrey*,[1] we must reverse the circuit court's order effectively dismissing the claims against defendants Parejko, Hale, and DeWinters because those actions are not precluded by the Act.

■ Plaintiff next contends that summary judgment was inappropriate with respect to her section 1983 claim because a genuine issue of material fact existed as to whether the County or the hospital established a policy which resulted in her injuries. She maintains that the incidents recounted in the transcript from the grievance hearing demonstrated that there existed a policy of supporting

---

[1]Defendants maintain that *Rodriguez v. Industrial Comm'n* (1983), 95 Ill. 2d 166, 447 N.E.2d 186, rather than *Meerbrey* controls in the present case. In *Rodriguez*, the plaintiff, in a racially motivated attack, was struck over the head by a co-employee with a two-by-four. The court ruled that since there was no evidence of a personal dispute between the two men, the injuries were merely a general hazard of the workplace and were therefore compensable under the Act. (*Rodriguez*, 95 Ill. 2d at 174.) We believe however that *Rodriguez* and *Meerbrey* addressed two distinct issues: the former, whether certain injuries are compensable under the Act, and the latter, whether employees with a compensable injury could also maintain a cause of action against an intentional tortfeasor. See *Fitzgerald v. Pratt* (1992), 223 Ill. App. 3d 785, 789, 585 N.E.2d 1222, *appeal denied* (1992), 144 Ill. 2d 632, 591 N.E.2d 21 (noting the distinction between *Meerbrey* and *Rodriguez*).

supervisors in confrontations with employees and that Parejko's superiors knew or should have known of her violent tendencies, but "intentionally retained her in their employment and trusted her with the supervision of other employees." Plaintiff also asserts that a genuine issue of material fact existed as to whether supervisory and security personnel were so poorly trained that there was "deliberate indifference" to the rights of those dealt with by employees.

The law is well established that a municipality cannot be held liable under section 1983 on a theory of *respondeat superior*. (*Monell v. Department of Social Services* (1978), 436 U.S. 658, 691, 56 L. Ed. 2d 611, 636, 98 S. Ct. 2018, 2036; see also *Henry v. Farmer City State Bank* (7th Cir. 1986), 808 F.2d 1228, 1237 (holding that a municipality will not be held liable merely because it employs a tortfeasor).) Instead, a government entity may be held liable only if, through some official policy, it causes the employee to violate another person's constitutional rights. (*Monell*, 436 U.S. at 692, 56 L. Ed. 2d at 636, 98 S. Ct. at 2036; *Leahy v. Board of Trustees of Community College District No. 508* (7th Cir. 1990), 912 F.2d 917, 922.) In order to satisfy her burden, a plaintiff must allege a specific pattern or series of incidents that support her allegation, rather than a bare allegation of policy or custom without a sufficient factual basis. (*Henry*, 808 F.2d at 1237; *Strauss v. Chicago* (7th Cir. 1985), 760 F.2d 765, 767-68.) The requisite policy or custom can be demonstrated by a failure to properly train employees when that failure amounts to a "deliberate indifference" to the rights of the persons with whom the employees come in contact. (*City of Canton v. Harris* (1989), 489 U.S. 378, 388, 103 L. Ed. 2d 412, 426, 109 S. Ct. 1197, 1204.) A plaintiff must demonstrate with particularity how the employee's training was deficient and how that deficiency resulted in the ultimate injury. *Canton*, 489 U.S. at 390-91, 103 L. Ed. 2d at 428, 109 S. Ct. at 1206.

In the instant case, plaintiff failed to present adequate factual allegations that an improper policy existed. Although she argues that the transcripts from the grievance hearing established the existence of a policy, our reading of the transcripts leads to a contrary conclusion. Furthermore, other than her mere allegation that other unnamed persons have been detained or arrested without adequate investigation to determine if probable cause existed, plaintiff presented nothing to support her claim that the hospital security force was improperly trained with a deliberate indifference to the

constitutional rights of others. Thus, summary judgment on the section 1983 action was proper in this case.

■ Plaintiff's final contention is that the circuit court incorrectly ruled that punitive damages were not available against all defendants.

Initially, we find that summary judgment with respect to the County on this issue was proper because the County cannot be sued on the basis of *respondeat superior*, nor could punitive damages be imposed against it in a section 1983 action. (See *City of Newport v. Fact Concerts, Inc.* (1981), 453 U.S. 247, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (holding that municipalities are immune from punitive damages under section 1983).) Similarly, because plaintiff is unable to establish a cause of action against defendants Dunne, Lawler, and Brodie, punitive damages could not be imposed on them. However, because punitive damages may be awarded for assault and battery committed with deliberate violence or oppression (*Hough v. Mooningham* (1986), 139 Ill. App. 3d 1018, 1024, 487 N.E.2d 1281) and for false arrests which are done "recklessly, oppressively, insultingly or wilfully, with a design to oppress and injure" (*Robinson v. Wieboldt Stores, Inc.* (1982), 104 Ill. App. 3d 1021, 1025, 433 N.E.2d 1005), a genuine issue of material fact remains concerning those issues as to defendants Parejko, Hale, and DeWinters. Therefore, summary judgment concerning punitive damages was inappropriate with respect to those defendants.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part and remanded for further proceedings regarding the claims against defendants Parejko, Hale, and DeWinters.

Affirmed in part; reversed in part and remanded.

McCORMICK, P.J., and HARTMAN, J., concur.